# IN THE COURT OF APPEALS OF IOWA

No. 24-1186
Filed October 2, 2024

**IN THE INTEREST OF R.N.,**
**Minor Child,**

**K.D., Mother,**
　　Appellant,

**J.N., Father,**
　　Appellant.
_____

Appeal from the Iowa District Court for Decatur County, William Price, Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Amanda Demichelis of Demichelis Law Firm, P.C., Chariton, for appellant mother.

Diana L. Rolands of Rolands Law Office, Osceola, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Dusty Lea Clements of Clements Law & Mediation, Newton, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

The mother and father of R.N., born in September 2022, separately appeal the termination of their parental rights. The mother challenges each step of the termination analysis, *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (describing the three-step analysis), and asks for more time. The father challenges the evidence supporting the grounds for termination and contends the Iowa Department of Health and Human Services (HHS) failed to make reasonable efforts to return the child to his custody. After considering each of their arguments, we affirm the termination of both the mother's and father's parental rights to R.N.

**I. Background Facts and Proceedings.**

The juvenile court removed the child from the parents' custody because the child tested positive for fentanyl and methamphetamine at birth and was hospitalized for withdrawal symptoms. Although the mother denied using methamphetamine during her pregnancy, she admitted she used fentanyl and being present while others used methamphetamine. The father knew the mother had substance-use issues, but he denied knowing she used during her pregnancy. Based on the mother's substance use and the father's lack of insight and protective capabilities, the juvenile court adjudicated the child to be a child in need of assistance (CINA) in October 2022.

Concerns about the parents' ability to provide safety and stability for the child persisted during the CINA case. The mother was incarcerated in the State of Missouri from July 2023 to May 2024. The mother admits that before her incarceration, she was using methamphetamine and failed to complete substance-use treatment. The father never progressed beyond fully supervised visits with the

child or showed insight into his role in the child's removal. The father failed to complete a parenting assessment and informed workers that he did not intend to prevent the mother from seeing the child after her release from prison.

Based on the lack of progress during the CINA proceedings, the State petitioned to terminate both the mother's and father's parental rights in February 2024. The termination hearing was held in April and continued in June, just five days after the mother was released from prison. In a July order, the juvenile court terminated both the mother's and father's parental rights under Iowa Code section 232.116(1)(e) and (h) (2024).

**II. Discussion.**

We review the termination of parental rights de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly with respect to credibility determinations." *Id.* The State must prove the grounds for termination by clear and convincing evidence, meaning "there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *Id.* (alteration in original) (citation omitted).

**A. Mother's Appeal.**

We first consider whether clear and convincing evidence shows the grounds for terminating the mother's parental rights. Because the juvenile court terminated the mother's parental rights on two statutory grounds, we may affirm if either ground is supported by the record. *See id.* at 313.

To terminate parental rights under Iowa Code section 232.116(1)(h), the court must find:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother does not dispute that the State proved the first three elements for termination under section 232.116(1)(h). Instead, she argues the State failed to prove by clear and convincing evidence that "the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." *Id.* § 232.116(1)(h)(4). A child cannot be returned to the parents as provided in section 232.102(6) if the child will suffer harm that would justify a CINA adjudication. "At the present time" means at the time of the termination hearing. *See In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021) (interpreting the phrase as used in Iowa Code section 232.116(1)).

The mother claims that the child can be returned to her custody because she completed substance-use treatment while incarcerated and was taking medication to help her maintain sobriety. But the mother was released from prison only days before the second date of the termination hearing. Because the mother has been battling substance use for at least six years and her ability to remain sober outside the controlled environment of prison remains untested, the child could not be returned to her custody at the time of the termination hearing. The child was also removed from the mother's custody while still hospitalized after birth and has never been returned to her custody. The mother has never provided for

the child's daily care and had no contact with the child for about one year, more than half the child's life. On this record, clear and convincing evidence supports terminating the mother's parental rights under Iowa Code section 232.116(1)(h).

We next consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *See A.S.*, 906 N.W.2d at 473 (citation omitted). When determining best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *accord In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019) (stating that "we look to the child's long-range as well as immediate interests, consider what the future holds for the child if returned to the parents, and weigh the child's safety and need for a permanent home" (cleaned up)).

The child had been removed from the mother's custody three times longer than required by statute. Once the statutory period for termination has passed, we view the proceedings with a sense of urgency. *See In re C.B.*, 611 N.W.2d 489, 494–95 (Iowa 2000). The child could not be returned to the mother's custody at the time of the termination hearing, and we cannot continue to deny the child permanency based on the hope that the mother may one day be able to meet the child's needs. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("[W]e cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)). As the guardian

ad litem noted in her position statement following the termination hearing, the foster family provides safety and stability and is willing to adopt the child:

> The child will be two years old in September. The child has been in her current foster home since September 27, 2022. The current foster home is the only home the child knows. The child is extremely bonded to the foster parents and the other children in the home. The foster parents are willing and able to adopt if the Court terminates the parent's parental rights.

Although termination may hurt the mother, the child's needs now supersede hers. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009) ("[A]t some point, the rights and needs of the child[] rise above the rights and needs of the parent."). Termination is in the child's best interests.

Turning to the last step of the termination analysis, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *See A.S.*, 906 N.W.2d at 473 (citation omitted). The mother asks us to apply the exception in section 232.116(3)(c), which applies if "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." But the mere existence of a parent-child bond alone is not enough. *W.M.*, 957 N.W.2d at 315. To avoid termination under section 232.116(3)(c), the mother bears the burden of showing by clear and convincing evidence "that, on balance, [the parent-child] bond makes termination more detrimental [for the child] than not." *Id.* The child was removed from the mother's custody at birth, and mother has not had contact with the child for over half of the child's life. The record does not show the strength of the mother's bond with the child outweighs the child's need for permanency such that termination of her parental rights will harm the child.

As an alternative to termination, the mother asks us to delay permanency for six months. *See* Iowa Code § 232.104(2)(b) (allowing the court to continue a child's placement for up to six months if the need for the child's removal from the home will no longer exist at the end of that period). But to delay permanency, we must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* There is no basis for making this finding. Moreover, we have already noted that the child has been removed from the mother's custody three times longer than section 232.116(1)(h) requires. Delaying permanency longer is both unwarranted and contrary to the child's best interests.

**B. Father's Appeal.**

The father also challenges the State's proof of the grounds for termination. Like the mother, the father does not dispute that the State proved the first three requirements for termination under section 232.116(1)(h). He contends there is not clear and convincing evidence showing the child could not be returned to his custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *A.B.*, 956 N.W.2d at 168. The gist of his argument is that termination stems from the mother's substance use while pregnant and it is unfair to deny his relationship with the child on this basis, a continuation of his attempt to downplay his role in the child's CINA adjudication and termination of his parental rights.

Clear and convincing evidence shows the child could not be returned to the father's custody at the time of the termination hearing. During the CINA proceedings, the father attended only one of the child's medical appointments and

never progressed beyond fully supervised visits. Service providers reported that the father arrived late to visits without items the child needed. The father had no specific plans for the child's return to his custody, nor did he have the items needed to care for the child in his home. In addition, there were concerns about the father's ongoing relationship with the mother, with whom the father maintained frequent contact despite her incarceration. One of the HHS case managers assigned to work with the family expressed concern that "it seems like [the mother] is fully in control of [the father]'s life and is making decisions that are going to impact him and he doesn't know it." The father denies this is true, but he allowed the mother to have contact with the child without HHS approval and told workers that he would not prevent contact further contact between them. His actions show that he does not view the mother as a threat to the child's safety despite her substance use. The father is unable protect the child from harm or provide for the care the child needs. Clear and convincing evidence supports terminating the father's parental rights under Iowa Code section 232.116(1)(h).

Finally, the father claims that HHS failed to make reasonable efforts toward reunification. *See* Iowa Code § 232.102 (stating that HHS must "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). Although these efforts are not a strict substantive requirement for termination, they impact the State's burden of showing a child cannot be safely returned to a parent's custody. *L.T.*, 924 N.W.2d at 527. The father argues that any inability to return to the child to his custody is due to HHS failing to provide services "to address his social inadequacies in

recognition of drug influences on [the] mother's actions or behaviors" and denying his request for increased visitation with the child.

Although HHS has a duty to make reasonable effort, a parent must object when they believe the services offered by HHS are inadequate. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). Objections should be made "early in the process so appropriate changes can be made." *Id.* at 840 (citation omitted). A dialogue between parents and HHS is encouraged. *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) (noting that it "may help the parties comply with the case permanency plan"). But if a parent requests services and is unsatisfied with HHS's response to that request, "the parent must come to the court and present this challenge." *Id.* Failing to do so will waive any challenge to the sufficiency of services provided by HHS. *See id.* at 148 (holding that a father waived his challenge to the sufficiency of services provided by the department by waiting until the eve of termination to raise it to the juvenile court). Although the father requested additional visitation from HHS workers, he never raised his claim about the sufficiency of services to the court.

Setting aside error-preservation concerns, these services would not have impacted the finding that the child could not be returned to the father's custody at the time of the termination hearing. The juvenile court found the father was not credible in his claims to HHS and his testimony at the termination hearing that he had "no knowledge" of the mother's drug use during pregnancy. Providing the father with services to recognize the mother's drug use and additional visitation would not have changed the result of the proceedings. We therefore affirm.

**AFFIRMED ON BOTH APPEALS.**